**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE RITE AID CORPORATION
SECURITIES LITIGATION

This document relates to:

ALL ACTIONS.

Case No. 2:22-cv-4201-KBH

**REPLY MEMORANDUM OF LAW IN SUPPORT OF INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 2

I.    THE COMPLAINT FAILS TO ALLEGE ANY FALSE OR MISLEADING
      STATEMENTS OR OMISSIONS ................................................................................ 2

      A.    Individual Defendants Had No Duty to Disclose the Loss of Virginia Premier ...... 3

      B.    The Safe Harbor Applies to Statements About Expected Retention Rates .............. 5

      C.    The Remaining Challenged Statements Are Not Actionable ................................. 7

II.   THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER ...... 7

III.  THE COMPLAINT FAILS TO PLEAD LOSS CAUSATION ..................................... 10

CONCLUSION ....................................................................................................................... 10

**TABLE OF AUTHORITIES**

PAGE(S)

CASES

*In re Adolor Corp. Sec. Litig.*,
616 F. Supp. 2d 551 (E.D. Pa. 2009) ..................................................................... 9

*In re Aetna, Inc. Sec. Litig.*,
617 F.3d 272 (3d Cir. 2010) ................................................................................... 5

*In re Aetna, Inc. Sec. Litig.*,
2009 WL 1619636 (E.D. Pa. June 9, 2009) ........................................................... 6

*In re Amarin Corp. PLC.*,
2015 WL 3954190 (D.N.J. June 29, 2015) ........................................................... 10

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
413 F. Supp. 2d 378 (E.D. Pa. 2005) ..................................................................... 5

*In re Anadigics, Inc., Sec. Litig.*,
2011 WL 4594845 (D.N.J. Sept. 30, 2011) ........................................................... 8

*Arcuri v. Cnty. of Montgomery*,
2021 WL 1811576 (E.D. Pa. May 6, 2021) ........................................................... 2

*Aviva Partners LLC v. Exide Techs.*,
2007 WL 789083 (D.N.J. Mar. 13, 2007) ............................................................. 9

*In re Campbell Soup Co. Sec. Litig.*,
145 F. Supp. 2d 574 (D.N.J. 2001) ....................................................................... 8

*In re Celgene Corp. Sec. Litig.*,
2019 WL 6909463 (D.N.J. Dec. 19, 2019) ........................................................... 6

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ............................................................................... 9

*In re Galena Biopharma, Inc. Sec. Litig.*,
336 F. Supp. 3d 378 (D.N.J. 2018) ....................................................................... 3

*GSC Partners CDO Fund*,
368 F.3d 228 (3d Cir. 2004) ................................................................................... 7

*Institutional Invs. Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) ................................................................................... 5

*Jackson v. Microchip Tech. Inc.*,
2020 WL 1170843 (D. Ariz. Mar. 11, 2020) ....................................................... 10

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) ............................................................................................... 8

*Monk v. Johnson & Johnson*,
    2011 WL 6339824 (D.N.J. Dec. 19, 2011) ............................................................................ 3

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002) .............................................................................................. 7

*In re NutriSystem, Inc. Sec. Litig.*,
    653 F. Supp. 2d 563 (E.D. Pa. 2009) ................................................................................ 6

*Payne v. DeLuca*,
    2006 WL 3590014 (W.D. Pa. Dec. 11, 2006) ................................................................... 8

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013) ........................................................................................ 7, 9

*Scheller v. Nutanix, Inc.*,
    2020 WL 5500422 (N.D. Cal. Sept. 11, 2020) ................................................................ 10

*Turnofsky v. electroCore, Inc.*,
    2023 WL 4527553 (D.N.J. July 13, 2023) ........................................................................ 8

## STATUTES & RULES

11 U.S.C. § 362(a) ............................................................................................................... 2

**PRELIMINARY STATEMENT**

As the Opening Brief established, the Complaint should be dismissed because it fails to state a claim for securities fraud.  Nothing in the Opposition alters that conclusion.  In fact, Plaintiff fails to dispute, and therefore concedes, many of the numerous bases for dismissal.  For instance, Plaintiff does not dispute that statements about the number of "new" lives that Elixir was securing during the 2023 selling season—i.e., the vast majority of the challenged statements—were neither false nor misleading.  The Opposition instead seizes upon a handful of statements regarding the retention of current clients or the percentage of covered lives that Elixir was "on track" or "expected" to retain following the 2023 selling season and argues that those statements were misleading because the Individual Defendants did not disclose the loss of one particular Elixir client, Virginia Premier.  But the Opposition fails to explain how those statements could have misled anyone, let alone a reasonable investor, in light of Plaintiff's concessions that Rite Aid regularly disclosed not only the number of "net lives" that Elixir was servicing in any given year, but also the precise risk that supposedly materialized following the alleged loss of Virginia Premier.  Further, because the challenged statements about Rite Aid's expectations regarding retained lives were forward-looking and accompanied by more than adequate cautionary language, they are protected under the PSLRA's safe harbor.  The remaining statements, which merely tout Elixir's success and sales team, are inactionable puffery.

The Complaint should also be dismissed for the independent reason that it fails to plead a "strong" inference of scienter as to any—let alone each—Individual Defendant.  Plaintiff's Opposition fails to address the sheer absence of particularized scienter allegations concerning each Individual Defendant's purportedly fraudulent state of mind, electing instead to rely on allegations that the Individual Defendants supposedly knew about the loss of Virginia Premier at the time certain alleged misstatements were made.  But nothing identified in the Complaint or the

1

Opposition remotely suggests that any Individual Defendant acted with the intent to mislead investors or knew that the challenged statements would be *misleading*—a fatal pleading defect.

Finally, the Opposition's reliance on its own curated version of Rite Aid's disclosures about the reasons for its 2022 goodwill impairment charge fails to remedy Plaintiff's deficient loss causation allegations for the reasons set forth in the Opening Brief.

**ARGUMENT**[1]

## I.    THE COMPLAINT FAILS TO ALLEGE ANY FALSE OR MISLEADING STATEMENTS OR OMISSIONS

The Complaint should be dismissed for a host of reasons that Plaintiff does not even attempt to contest.  Among others, Plaintiff does not dispute, and therefore concedes, that the Complaint does not allege that any disclosures regarding "new lives" were false or misleading (Br. 9-14); that almost all projections about, or characterizations of, the 2023 selling season were forward-looking statements immunized under the PSLRA's safe harbor (*id.* 16-17); and that statements of corporate optimism are inactionable as a matter of law (*id.* 15-16).  *See, e.g.*, *Arcuri v. Cnty. of Montgomery*, 2021 WL 1811576, at \*10 (E.D. Pa. May 6, 2021) (claim waived because opposition failed to substantively address dismissal arguments).  As a result of these concessions, Plaintiff is left with only a handful of challenged statements, none of which provides a basis to sustain Plaintiff's claims.[2]

---

[1] Unless otherwise noted, all case and record citations omit internal citations, quotation marks, or alterations; all emphasis is added; and all capitalized terms shall have the same meaning as the Defendants' memorandum of law in support of their Motion to Dismiss, ECF No. 36 ("Opening Brief").  Citations to "¶" or "¶¶" refer to paragraphs in the Complaint; "Br." refers to the Opening Brief; "Opp." refers to Plaintiff's Opposition, ECF No. 39 ("Opposition").

[2] Defendant Rite Aid Corporation ("Rite Aid") filed for Chapter 11 bankruptcy on October 15, 2023.  ECF No. 38.  As a result, claims against Rite Aid are automatically stayed under 11 U.S.C. § 362(a).  Claims against the Individual Defendants likewise should be stayed because (….continued)

2

### A.     Individual Defendants Had No Duty to Disclose the Loss of Virginia Premier

Plaintiff all but concedes that the Individual Defendants had no duty to disclose the loss of a single client. Br. 12-13. He does not identify a statute that required any such disclosure, nor does he allege that any Individual Defendant engaged in any insider trading. Moreover, Plaintiff does not allege that any Individual Defendant ever stated that Elixir expected to retain Virginia Premier—or any other client. To the contrary, Rite Aid repeatedly warned investors that its client base was concentrated among a handful of large clients and that the loss of any one client could materially impact Rite Aid's financial results—the precise risk that Plaintiff claims materialized here. *Id.* 11, 13. Plaintiff instead pivots to an entirely different theory: that the failure to disclose the loss of Virginia Premier rendered misleading a handful of unrelated statements regarding the number of covered lives that Elixir was "on track" or "expected" to retain for the 2023 season. Opp. 11-16. This argument is meritless.

First, contrary to Plaintiff's assertion, *id.* 11-12, Regulation S-K cannot provide the basis for Plaintiff's claims. Br. 14. Indeed, the Third Circuit in *Oran* "explicitly rejected the argument that SK–303 creates a duty of disclosure that would constitute a material omission under Rule 10b–5." *Monk v. Johnson & Johnson*, 2011 WL 6339824, at *12 (D.N.J. Dec. 19, 2011); *see also In re Galena Biopharma, Inc. Sec. Litig.*, 336 F. Supp. 3d 378, 391 (D.N.J. 2018) ("The Third Circuit has held squarely in *Oran v. Stafford* . . . that there is no independent private right of action under Item 303."). Plaintiff's cases (Opp. 12 & n.6) are inapposite, as neither considered whether a violation of Item 303 could give rise to liability under the Exchange Act.

---

(continued….)

they are inextricably intertwined with claims against Rite Aid, *see id.*, which the Individual Defendants will address further in their forthcoming motion to stay the case.

Second, Plaintiff argues that the Individual Defendants had a duty to disclose the loss of Virginia Premier because they "decided to speak on the issue of client retention" and "explicitly put the number of covered lives in play." Opp. 12. But Plaintiff fails to explain how this created a duty to disclose the loss of Virginia Premier in particular, as opposed to Elixir's "net" number of covered lives more generally, which Rite Aid regularly disclosed in its SEC filings.[3] Nor does Plaintiff dispute the accuracy of the Individual Defendants' statements about the number of "covered lives" Elixir secured for the upcoming coverage period. Br. 9. Nothing about these statements created an "obligation" to disclose the loss of Virginia Premier.

Nor did statements regarding the retention of MCS (another Elixir client) establish such a duty. Plaintiff argues that one such statement was misleading because it failed to disclose that Virginia Premier, and not MCS, was Elixir's largest client at the time. Opp. 15. But Plaintiff alleges that Rite Aid lost Virginia Premier in February 2022—four months *before* the statement about retaining MCS was made. ¶¶ 43, 73. Thus, based on Plaintiff's own allegations, MCS *was* Elixir's largest client at the time the statement was made, from which it follows that the statement was accurate. Moreover, nothing about the MCS statement was misleading with respect to Virginia Premier; the Individual Defendants never even remotely suggested that Elixir would retain Virginia Premier (or any client) following the 2023 selling season.

Finally, Plaintiff suggests that the Individual Defendants had a duty to disclose the loss of Virginia Premier because there otherwise was no "mathematical possibility" of achieving a 95% retention rate. Opp. 11-12. But Plaintiff misleadingly relies on a partial quotation of the relevant

---

[3] Contrary to Plaintiff's assertions, Opp. 9-10, there is no question that the Court may take judicial notice of the disclosures attached to the Motion, all but one of which is cited in the Complaint. Br. 4 n.3. Plaintiff also is incorrect that citation to these documents creates a "factual dispute" or an evidentiary issue, Opp. 10; rather, the documents enable the Court to consider Plaintiff's claims in context based on the complete disclosures that were made.

statement.  In its entirety, Ms. Donigan explained that Elixir was "on track" to retain 95% of its existing business, but only "***after accounting for previously known losses due [to] health plan consolidation***."  ¶ 47.  The Complaint does not allege that Ms. Donigan's complete statement was false or misleading when made, nor that the complete statement triggered a duty to disclose the loss of Virginia Premier.[4]

### B.      The Safe Harbor Applies to Statements About Expected Retention Rates

Numerous alleged misstatements are not actionable under the PSLRA's safe harbor, including alleged statements projecting the percentage of covered lives that Elixir would retain for the 2023 season. Br. 16-17.  All of the requirements are met for the safe harbor to apply.

*First*, statements that Elixir was "on track" or "expected" to retain 95% of its existing business at the end of the 2023 selling season are quintessential forward-looking statements because they "expressed expectations about . . . a specific measure of future performance"—i.e., the selling season results. *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 280 (3d Cir. 2010).  As Plaintiff's authorities demonstrate (Opp. 13), courts have found that virtually identical statements satisfy this definition. *See, e.g.*, *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 254-55 (3d Cir. 2009) (statement that "we are on track to meet our goals for the year" was forward-looking);

---

[4] Plaintiff similarly challenges a statement by Mr. DuPaul that described Elixir's "expected" retention rate for 2023 as 95%.  Opp. 11, 13.  But that statement is no more actionable than Ms. Donigan's because it must be "[r]ead in context with all of the information available to investors," including Ms. Donigan's earlier statement that the 95% expected retention rate accounted for previously known client losses. *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 413 F. Supp. 2d 378, 401 (E.D. Pa. 2005).  Moreover, during the same conference call where Mr. DuPaul made his challenged statement, Mr. Schroeder announced that Elixir's EBITDA was down in part because of the "*loss* of covered lives," which was consistent with prior disclosures about the expected loss of covered lives.  Br. Ex. I at 7; *see also* Br. Ex. E at 14 ("[T]he expectation for next year is that our revenues in lives are going to be down from this year."); Br. Ex. F at 12 ("We are going to see some gross profit dollar degradation from the loss in lives").

5

*In re Celgene Corp. Sec. Litig.*, 2019 WL 6909463, at \*14 (D.N.J. Dec. 19, 2019) (statements were forward-looking where company said it was "on track" to reach target sales projections).[5]

*Second*, contrary to Plaintiff's conclusory assertion that the accompanying cautionary language was "mere boilerplate" and not "tailored," Opp. 14, Rite Aid's risk disclosures were precisely tailored to the issue of client loss and the resulting impact on "net lives" and future business prospects. Br. 10-11 (quoting Ex. G. at 35, 39). Further, each challenged disclosure was accompanied by warnings that, among other things, expressly incorporated these robust risk disclosures. *E.g.*, Ex. D at 4; Ex. F at 4. Such language is more than sufficient to invoke the safe harbor. *See In re NutriSystem, Inc. Sec. Litig.*, 653 F. Supp. 2d 563, 579 (E.D. Pa. 2009).[6]

Finally, the Complaint fails to allege that the challenged statements were made with "actual knowledge" that the statements were false or misleading, an independent basis to apply the safe harbor. Br. 17; *see In re Aetna, Inc. Sec. Litig.*, 2009 WL 1619636, at \*23 (E.D. Pa. June 9, 2009).[7]

---

[5] Where a present-tense component of a forward-looking statement "cannot 'meaningfully be distinguished from the future projection of which they are a part,' the statement as a whole can be considered forward-looking." *In re Celgene Corp.*, 2019 WL 6909463, at \*14 (quoting *Avaya*, 564 F.3d at 255). Here, any reference to current client retention is inextricably intertwined with the forward-looking expectation about such retention for the not-yet-concluded 2023 selling season, rendering such statements nonactionable.

[6] Further, Plaintiff's claim that this cautionary language was inadequate because the "risk had already come to pass," Opp. 13-14, is incorrect. The risk warned about was not the loss of a large client, but the risk of a *resulting adverse effect* on Elixir's financial results. Br. 13 n.6. Plaintiff alleges that risk materialized only *after* the selling season concluded. *Id.*

[7] Statements about expected retention rates also are inactionable as statements of opinion for the same reasons. Br. 17. Plaintiff offers only conclusory responses, Opp. 14-15, including that the Individual Defendants did not "sincerely believe[]" the challenged opinions. Plaintiff's claim that the Individual Defendants somehow waived this argument—despite raising it in the Opening Brief—is entirely unsupported and meritless.

C.     The Remaining Challenged Statements Are Not Actionable

Statements of corporate optimism touting Elixir's sales during the 2023 selling season, characterizing Elixir as a "growth story," and describing Elixir's sales team as "very strong," Opp. 16-18, are textbook puffery and therefore inactionable.  Br. 15-16 (citing cases).  Plaintiff's only response is that these statements were "verifiably false" because Elixir purportedly was not growing its covered lives.  Opp. 17.  But this conflates "net" lives with "new lives" being added during the 2023 selling season.  As Plaintiff concedes, statements about "new lives" were not false or misleading, and Plaintiff does not contest that Rite Aid regularly disclosed its "net lives," thereby revealing that Elixir was losing lives on a yearly basis, Br. 9-12.

With respect to the statement about the reason Elixir lost Bright Health, Opp. 18, Plaintiff does not contest, and therefore concedes, that the statement was not false when made, rendering it inactionable.  Br. 17-18; *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002).  In any event, the reason Elixir lost Bright Health is immaterial.  Br. 17-18.

## II.     THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

The Complaint should be dismissed for the independent reason that it fails to plead the requisite strong inference of scienter.  Br. 18-23.  Plaintiff again all but concedes the issue. Plaintiff does not dispute he has failed to plead that any (let alone each) Individual Defendant had *any* motive to commit fraud or received *any* benefit from the alleged fraud—a "significant" pleading defect that weighs strongly in favor of dismissal.  *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 245 (3d Cir. 2013).  And Plaintiff does not dispute that where, as here, the Complaint fails to plead motive, "the strength of [Plaintiff's] circumstantial allegations must be *correspondingly greater*."  *See GSC Partners CDO Fund*, 368 F.3d 228, 238 (3d Cir. 2004).  The Complaint does not come close to meeting this standard.

7

Plaintiff's core theory of scienter is that the Individual Defendants "were aware" that Elixir had lost Virginia Premier as a client as early as February 2022 but did not disclose that information.  Opp. 18-22.  As an initial matter, this theory fails because, as discussed, the Individual Defendants had no duty to disclose the loss of Virginia Premier.  *See supra* I.A.  But even if such a duty existed, Plaintiff's allegations amount to nothing more than alleging knowledge of the loss of Virginia Premier, which is insufficient to plead scienter.  *See Turnofsky v. electroCore, Inc.*, 2023 WL 4527553, at *14 (D.N.J. July 13, 2023) ("Mere allegations of [defendants'] knowledge of the business, without more, [do] not prove scienter."); *Payne v. DeLuca*, 2006 WL 3590014, at *23 (W.D. Pa. Dec. 11, 2006) (same).

Here, there are no allegations that create a "strong" inference that *any* Individual Defendant made the challenged statements *with an intent to deceive* investors about the loss of Virginia Premier (or otherwise).  Br. 20-23; *Merck & Co. v. Reynolds*, 559 U.S. 633, 648-49 (2010) (complaint must allege individual defendant "made a material misstatement with *an intent to deceive*—not merely innocently or negligently").  The Opposition claims that intent can be inferred from public statements that allegedly "contradict[ed]" the Individual Defendants' supposed knowledge about the loss of Virginia Premier.  Opp. 20-22.  But the Complaint does not identify a *single* public statement—at any point in time—that so much as mentions Virginia Premier.[8]  Br. 20-22.  This illusory "contradiction" thus provides no basis to infer scienter.  *See In re Anadigics, Inc., Sec. Litig.*, 2011 WL 4594845, at *33 (D.N.J. Sept. 30, 2011) (dismissing complaint on scienter grounds because defendant's knowledge was consistent with statements).

---

[8] Plaintiff's authorities, Opp. 20, which involve direct contradictions between the statement made and the knowledge allegedly held by the individual, illustrate this point. *See, e.g.*, *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 588 (D.N.J. 2001) (finding inference of scienter where executive's statement that "shipments are made promptly contradict[ed]" practice, known to executive, that company stored purchased product until requested delivery).

Plaintiff further relies on various confidential witnesses ("CWs") to try to buttress his scienter theory, but these allegations also amount to nothing more than the assertion that the Individual Defendants were aware by the spring of 2022 that Elixir had lost Virginia Premier. Br. 22-23. Plaintiff does not allege that any CW ever spoke with an Individual Defendant, let alone witnessed or observed any conduct that could give rise to a strong inference of scienter, rendering them irrelevant. *See, e.g.*, *In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d 551, 575 (E.D. Pa. 2009) (CW allegations must "create the kind of detailed picture that is required to establish scienter"; finding that allegations from CWs who did not work with defendants could not "illuminate [d]efendants' states of mind" and failed to plead scienter).[9]

In addition, Plaintiff repeatedly asserts that the Individual Defendants' scienter can be inferred from their alleged "access" to or knowledge of relevant information because (1) of their "day to day" involvement in the Company's operations; (2) they occupied "critical" senior roles; or (3) they held themselves out as "experts" by virtue of answering analysts' questions on the subject matter of Elixir's covered lives. *E.g.*, Opp. 19-20. None of these is a viable theory of scienter, and each reflects precisely the type of inferential leap—from general knowledge to specific intent—that the Third Circuit has prohibited as a basis for sustaining claims of scienter at the pleading stage. *See, e.g.*, *Rahman*, 736 F.3d at 247 ("[G]eneral awareness of the day-to-day workings of the company's business does not establish scienter—*at least absent some additional allegations of specific information conveyed to management and related to fraud*.").

---

[9] Plaintiff's cases affirm that his CW allegations are irrelevant, as they involve CWs who witnessed firsthand significant instances of alleged misconduct. *See, e.g.*, *Aviva Partners LLC v. Exide Techs.*, 2007 WL 789083, at *18 (D.N.J. Mar. 13, 2007) (CWs, high level employees who worked closely with defendants, provided detailed examples where defendants were informed about the company's difficulties and instructed others not to take corrective action); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1018 (9th Cir. 2005) (CWs observed defendants engage in accounting manipulation and were instructed by defendants to ignore bribery).

Finally, the Opposition's remaining bases for inferring scienter, Opp. 22-23, fail.[10]  *See* Br. 22 n.10 (addressing inapplicable temporal proximity argument).  For example, Plaintiff's reliance on the so-called core operations doctrine is misplaced because that doctrine does not provide an independent basis for inferring scienter without sufficiently alleging "that defendants had ample reason to know of the falsity of their statements."  *In re Amarin Corp. PLC.*, 2015 WL 3954190, at *12 (D.N.J. June 29, 2015).  There are no such allegations here.

## III.   THE COMPLAINT FAILS TO PLEAD LOSS CAUSATION

Plaintiff argues that he has adequately pled loss causation because his pleading burden is low and because Rite Aid's goodwill impairment supposedly was caused by a loss in covered lives.  Opp. 23-25.  But Plaintiff misquotes Rite Aid's disclosures and ignores that the reasons provided for the goodwill impairment in no way reveal that any prior statements were false or misleading—including with respect to losses in covered lives—or that the impairment had anything to do with the alleged failure to disclose the loss of Virginia Premier.  Br. 24-25.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Opening Brief, the Individual Defendants respectfully request that the Court dismiss the Complaint with prejudice.

---

[10] Plaintiff claims that Ms. Donigan's discussion of the loss of Virginia Premier at an internal company meeting somehow demonstrates her fraudulent state of mind.  Opp. 21-22.  That is demonstrably not so.  Br. 21.  The alleged circumstances here are far different from those in the cases on which Plaintiff relies.  Opp. 21-22.  For example, in *Jackson v. Microchip Tech. Inc.*, 2020 WL 1170843, at *11 (D. Ariz. Mar. 11, 2020), the court found a plausible inference of scienter where the CEO, among other things, acknowledged inventory stuffing practices internally, which had the effect of overstating revenue, and then reported inflated inventory and revenue levels to investors the next day.  And in *Scheller v. Nutanix, Inc.*, 2020 WL 5500422, at *6-7 (N.D. Cal. Sept. 11, 2020), the court found a plausible inference of scienter with respect to statements about adding a "record number" of new customers where the CEO allegedly knew that the new customer pipeline had effectively dried up, yet he touted the company's "huge contribution" to "customer acquisition."  There are no comparable allegations here.

Respectfully submitted,
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated:    January 12, 2024          By:      */s/ Andrew M. Erdlen*

Andrew M. Erdlen (Atty. I.D. No. 320260)
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
Telephone:  (215) 568-6200
aerdlen@hangley.com

*-and-*

Dana M. Seshens (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800
dana.seshens@davispolk.com

Andrew Yaphe (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone:  (650) 752-2000
Facsimile:  (650) 752-2111
andrew.yaphe@davispolk.com

*Counsel for Defendants Heyward Donigan,*
*Matt Schroeder, and Chris DuPaul*

11

**CERTIFICATE OF SERVICE**

I, Andrew M. Erdlen, hereby certify that on January 12, 2024 I caused to be served the foregoing Reply Memorandum of Law In Support of Individual Defendants' Motion to Dismiss the Amended Complaint on all counsel of record by the Court's Electronic Case Filing (ECF) system.

By:    */s/ Andrew M. Erdlen*
        Andrew M. Erdlen